**UNITED STATED DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DJB RENTALS, LLC,**

**Plaintiff,**

**v.** **CASE NO. 8:25-cv-01221**

**CITY OF LARGO, FLORIDA,**

**Defendant.**
__________________________________/

**DEFENDANT, CITY OF LARGO'S RESPONSE IN OPPOSITION TO PLAINTIFF, DJB RENTAL, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, City of Largo, Florida ("City"), by and through the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby responds in opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. 52].

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The City incorporates and reasserts its statement of undisputed material facts and arguments set forth in its Motion for Final Summary Judgment [Doc. 51].

This action arises out of Plaintiff's failure to bring its multi-unit rental property into compliance with the City's code for nearly 8 years, resulting in the property accruing a lawfully authorized daily fine and lien, totaling $585,500, on which the City ultimately foreclosed, pursuant to applicable Florida Statutes.

Plaintiff received notice of each violation, appeared at a hearing on the violations and received two separate orders advising him of the findings of the

violations, the amount of the fine that would accrue daily, his ability to appeal the fine and his obligation to notify the Board upon compliance being achieved. Plaintiff did not appeal the order and proceeded to spend years making piecemeal repairs, all while allegedly relying on a single, alleged oral representation that if he achieved compliance, the fine could be reduced. Plaintiff never asked another question about reduction or the process. He now claims that the fine amount that he allowed to accrue through his own inaction is unconstitutionally excessive and that he was deprived of due process because the City did not provide a new notice and hearing each day that the fine accrued and because the availability for reduction ended upon foreclosure. The relevant law is in direct opposition to these claims.

Because Plaintiff's Motion fails to show that it is entitled to judgment as a matter of law, and also fails to rebut the City's arguments in its Motion for Final Summary Judgment, Plaintiff's Motion should be denied.

## II. MEMORANDUM OF LAW

### A. Plaintiff is not entitled to judgment on Count I because the daily fine is not grossly disproportionate as a matter of law

The Excessive Fines Clause bars only fines that are "grossly disproportional to the gravity of a defendant's offense," and proportionality is "[t]he touchstone of the constitutional inquiry". *Unites States v. Bajakajian*, 524 U.S. 321, 334 (1998). Even assuming the daily fine is a "fine" subject to the Clause, Plaintiff cannot show

gross disproportionality on this record and controlling authority forecloses each step of its argument.

### i. Excessiveness is measured by the $250 daily fine, not the aggregate Plaintiff allowed to accrue

Plaintiff's entire claim rests on the total amount that Plaintiff permitted the daily fine to accrue to, rather than the daily rate the Board imposed. (Doc. 52, Argument II, C). The aggregate total is the wrong measure, and courts in this Circuit have said so repeatedly. When evaluating an accumulating code-enforcement fine, courts "regard the fine as the amount imposed per day when the offender knowingly violates the law, rather than the total cumulative fine after the offender permits it to grow." *Robson 200, LLC v. City of Lakeland, Fla.,* 593 F. Supp. 3d 1110, 1122 (M.D. Fla. 2022). The Eleventh Circuit applied exactly that rule in *Moustakis v. City of Fort Lauderdale*, where a $150 per day fine had accrued over fourteen years to $700,000. The court held the fine was "properly characterized as a $150 per day fine," not the cumulative total, and that because the cumulative total "was created by the [owners'] failure to bring the house into compliance with the Code each day for 14 years," it was "literally, directly proportionate to the offense." 338 F. App'x 820, 822 (11th Cir. 2009).[1]

[1] Plaintiff attempts to discredit *Moustakis* due to the sole fact that it is an unpublished opinion. However, that does not mean that *Moustakis* is not persuasive. Further, *Moustakis* has been cited to, and its approach agreed with in other 11th Circuit, published opinions, including *United States v. Schwarzbaum,* 127 f. 4th 259 (11th Circ. 2025), which itself supports the position that it is the daily fine that is analyzed for purposes of excessiveness.

The same conclusion was reached in *Robson 200, LLC v. City of Lakeland, Fla.,* holding that the "unit of prosecution" for a Chapter 162 fine is "the daily refusal" to cure, so that "refusal to comply with a fine over a long period, such that the fine accrues to a substantial amount, does not give the defendant the ability to turn around and argue that the large total fine has become excessive. Otherwise, there would be an incentive to not comply with fines for lengthy periods until they eventually grow to an unconstitutional amount." 593 F. Supp. 3d 1110, 1123-1124 (M.D. Fla. 2022). Florida courts agree. In *Martinez v. Lantana*, the Fourth District "reject[ed] the homeowner's focus on the total amount of the fines," holding that "the focus is on the fines' per diem amount." 410 So. 3d 15, 18-19 (Fla. 4th DCA 2025). Adopting Plaintiff's position that measures excessiveness by the accrued total would let every noncompliant owner manufacture a constitutional claim simply by waiting and would reward the offender for his or her failure to comply with the code. *Robson 200,* 593 F. Supp 3d at 1123-1124.

Plaintiff cites to *Innova Inv. Grp., LLC v. Vill. Of Key Biscayne*, for the proposition that the excessive fines claim accrues, at the latest, when an owner could have calculated the aggregate amount. No. 21-11877, 2024 WL 2748480, at 3 (11th Circ. May 29, 2024). This citation is inapplicable. The quoted text comes from the Court's analysis regarding the statute of limitations defense, finding that even when applying the latest date possible, plaintiff's claim was still time barred. The language is misapplied and does not support Plaintiff's argument.

Plaintiff also argues that the fact that the City foreclosed on the aggregate amount is somehow relevant. However, that the accumulated fine total was the amount litigated in the foreclosure action is a procedural necessity, not an admission that the fine must be judged as an aggregate. It was Plaintiff's own ongoing failure to achieve compliance for nearly 8 years that caused the accumulation and Plaintiff cannot now use the size of the fine it allowed to accrue as evidence of its alleged unconstitutionality.

#### ii. A fine within the statutory cap carries a strong presumption of constitutionality and is proportional to Plaintiff's violations

The $250 daily fine is the maximum the Florida Legislature authorized for a first-time code violation. Fla. Stat. §162.09(2)(a). A fine within the range the legislature prescribed enjoys "a strong presumption of constitutionality", because "judgments about the appropriate punishment for an offense belong in the first instance to the legislature". *Ficken v. City of Dunedin*, Fla., No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408 at 21 (M.D. Fla. Apr. 26, 2021); *Unites States v. Bajakajian*, 524 U.S. 321, 336 (1998). The Eleventh Circuit "assigns great weight to the fines approved by the legislature," and a fine below the statutory maximum is presumptively valid. *Robson 200, LLC v. City of Lakeland, Fla.,* 593 F. Supp. 3d 1110, 1120 (M.D. Fla. 2022). In *Moustakis v. City of Fort Lauderdale*, the court deferred to the legislature's $250/$500 daily caps and upheld the fine on that basis alone. 338 F. App'x 820, 821 (11th Circ. 2009).

Plaintiff's position that the presumption rests on a nonexistent "legislative judgment" because the legislature capped "only a daily rate" weighs in favor of the City's position. The legislature fixed the daily rate because the daily rate is the fine; the aggregate is a function of how long Plaintiff chose not to comply. Having set the maximum first-violation penalty at $250 per day, the legislature made precisely the proportionality judgment to which courts defer. *Id.*

Notwithstanding the presumption, the three-factor proportionality analysis the Eleventh Circuit uses confirms the result. *Martinez v. City of Lantana*, 410 So. 3d 15, 18 (Fla. Dist. Ct. App. 2025). First, Plaintiff concedes it falls within the class of persons the code targets. (Doc. 52, Argument II, B). Second, the fine sits at — not above — the statutory ceiling, which is "the most important" factor and is satisfied here. *Ficken,* 2022 WL 2734429, at 3. Third, the gravity of the offense is substantial: the Board found life-safety hazards on an occupied eight-unit rental, involving roofing, stairways, handrails, plumbing, heating, electrical, and unpermitted-construction conditions. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 38, 39, 41, 45); (Doc. 51, Ex. 19, Photos. From Aug. 27, 2015 Hearing); (Doc. 51., Ex. 9, Trans. Aug. 27, 2015 Hearing, 2:6-3:22; 6:17-19; 7:19-25; 8:4-16, 23-25; 9:1-5, 10-12). Under Florida law, a statutorily authorized civil fine is not excessive "unless it is so great as to shock the conscience" or is "patently and unreasonably harsh or oppressive" *Martinez*, So. 3d at 18. A maximum daily fine for sustained, uncured life-safety violations is neither.

The fine is not grossly disproportionate when measured against Plaintiff's actual conduct and the legitimate government interest in compliance. Plaintiff's culpability was not minimal- it failed to achieve full compliance for nearly 8 years after receiving the initial citations. (Doc. 52, Stmnt. of Undisputed Mat. Facts, 4, 25). The repairs undertaken were piecemeal and incomplete, with significant work not completed until after the foreclosure judgment was entered and only under pressure of the pending sale. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 58-63). Accordingly, the City's imposition of the maximum $250 per day fine is directly proportional to the gravity of the Plaintiff's Code violations.

**iii. The daily fine is a remedial compliance mechanism, not a punishment, and therefore falls outside of the Excessive Fines Clause**

The Excessive Fines Clause reaches only payments exacted "as punishment for some offense" *Austin v. United States*, 509 U.S. 602, 610 (1993). Chapter 162 fines are a statutory mechanism to compel compliance: the statute is titled "Administrative fines," its stated purpose is to provide "an equitable, expeditious, effective, and inexpensive method of enforcing" local codes, and the code inspector's sole duty "is to assure code compliance". That compliance was the fine's object is, on this record, undisputed. A sanction designed to secure compliance with the law is remedial, and the fact that it may also deter does not convert it into punishment. *Landa v. United States*, 153 Fed. Cl. 585, 600 (2021).

Municipal code enforcement fines are classically remedial because they are designed to restore properties to compliance with health and safety standards that

protect the public- a function distinct from criminal punishment. The fine was not imposed as a punitive sanction for a completed offense but as a prospective mechanism tied entirely to Plaintiff's own ongoing noncompliance. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 3, 14, 15). Plaintiff could have stopped the accrual at any time by achieving compliance. The fact that Plaintiff did not reach full compliance until nearly 8 years after the initial citations demonstrates that the fine continued to serve its compliance function throughout the accrual period. That the City sought payment in full after judgment does not transform the fine into retribution. It reflects the City's legitimate interest in recovering the cost of prolonged enforcement and deterring future noncompliance by other property owners.

**iv. The foreclosure and auction sale are not a separate punitive fine**

Plaintiff separately contends that the foreclosure and the auction sale were themselves excessive punishment because the price was a fraction of the property's value. The Supreme Court materially rejected the same theory this year. In *Pung v. Isabella Cnty., Michigan*, the Court held that a tax-foreclosure sale of real property for far less than its fair market value does not violate the Excessive Fines Clause; the Court found no "historical or precedential support" for the proposition that "a fairly conducted" sale returning only surplus proceeds is punitive, and warned that a fair-market-value rule would "invite the … demise of this country's longstanding use of tax sales to collect debts". 609 U.S. 30, 43, 44 (2026). A code-

lien foreclosure under Fla. Stat. § 162.09(3) is the same kind of in rem debt-collection mechanism, and the same reasoning controls.

*Ficken*, confirms the point in the Chapter 162 context itself: even assuming a code-lien foreclosure is a "fine," it "is not grossly disproportional, nor does it shock the conscience," because the statute authorizes foreclosure of an unpaid lien after three months and "deference is due to [that] legislative enactment." *Ficken v. City of Dunedin, Fla.*, No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408, at 25 (M.D. Fla. Apr. 26, 2021).

Plaintiff's reliance on *Tyler v. Hennepin Cnty., Minnesota*, is misplaced. 598 U.S. 631 (2023). *Tyler* was a Takings decision about a county's retention of surplus equity after a tax sale; it did not hold that a below-value sale is an excessive fine. *Id*. at 642-44. *Pung* has since confirmed that a fairly conducted sale for less than fair market value does not offend the Eighth. *Pung*, 609 U.S. at 42-44. The surplus-equity concern in *Tyler* is absent here in any event: the sale yielded the City far less than its $590,295 judgment, the purchaser assumed more than $319,000 in additional senior liens, and Plaintiff's principal concedes the City did not intentionally undersell the property. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 68, 69). There was no windfall to the City to condemn.

Finally, Plaintiff's excessive-fines claim is, at bottom, a challenge to the amount of a fine fixed by Board orders that Plaintiff never appealed. An owner who forgoes the section 162.11 appeal "can either appeal that order or choose to be bound by it," but "cannot initiate a collateral attack on that order" later. *Brevard*

*Cnty. v. Obloy*, 301 So. 3d 1114, 1117 (Fla. 5th DCA 2020); § 162.11 Fla. Stat. "Matters determined in an order which has become final without appeal are not later subject to appellate review" and a party "cannot plead around its failure to timely appeal … by couching its claims as constitutional violations". *Kirby v. City of Archer*, 790 So. 2d 1214 (Fla. 1st DCA 2001); *Innova Inv. Grp., LLC v. Vill. of Key Biscayne,* No. 1:19-CV-22540, 2020 WL 6781821, at 3 (S.D. Fla. Nov. 18, 2020). This principle independently forecloses judgment for Plaintiff on Count I.

**v. Reduction in other matters has no relevance to the proportionality of the $250 daily fine**

Plaintiff's contention that the City's practice of granting reductions in other cases supplies the "measure of a proportionate penalty" misunderstands the inquiry. Proportionality is measured against the statutory range and the gravity of the offense, not against discretionary mitigation the City extended to owners who achieved compliance and asked for relief — relief Plaintiff never sought and for which it never qualified. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 13, 63, 67). That other owners cured their violations and obtained reductions does not make the lawful, within-cap fine imposed on a noncompliant owner unconstitutional.

The City's fine reduction practice does not establish that the fines imposed against Plaintiff were constitutionally excessive, it merely reflects the City's discretionary settlement policy, which is distinct from the constitutional floor set by the Eighth Amendment. The fact that the City routinely reduces fines for eligible owners does not mean Plaintiff was entitled to a reduction or that the

unreduced fine is constitutionally infirm. Plaintiff's eligibility for a reduction was affected by its own conduct. The Eighth Amendment nor does the City's Code require the government to mitigate or reduce fines. It requires only that the fine not be grossly disproportionate to the offense and the City's willingness to negotiate does not transform a lawfully imposed fine into an unconstitutional one. *Unites States v. Bajakajian*, 524 U.S. 321, 322 (1998).

**vi. Plaintiff's argument regarding the taking of its sole asset is not compelling under the applicable law**

Plaintiff argues that the fine was disproportionate because it "took DJB's livelihood". Plaintiff is owned solely by a single individual, Donald Bourgeois. Bourgeois created DJB for the sole purpose of purchasing and managing the property. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 16); (Doc. 52, Stmnt. of Undisputed Mat. Facts, 2). The fact that the property is Plaintiff's sole asset is a circumstance of Plaintiff's own business structure and does not transform an otherwise proportionate fine into an excessive one.

Regardless, the law is clear that the proportionality test is about the offense, not the offender. Courts have repeatedly rejected the idea that the effect of a sanction on a particular defendant's finances controls excessiveness. *U.S. v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F. 3d 1304, 1311 (11th Cir. 1999); *Unites States v. Bajakajian*, 524 U.S. 321, 333 (1998).

If a fine is proportionate to the offense, it does not become excessive because the claimant put all its value into one entity. A contrary rule would let any

wrongdoer cap its exposure by holding the relevant property in a single-purpose vehicle.

**vii. The code violations were not harmless simply because there was no concrete injury**

Plaintiff repeatedly attempts to downplay the severity of the Property's code violations, arguing they were not serious because there was no recognized injury, based on *Bajakajian,* claiming that, where an offense injures no one, the government can identify, the gravity of the offense is low. This argument is disingenuous and imposes elements/standards that are not required in the test for proportionality. The City's Development Code provides for minimum standards governing the construction of dwellings, buildings, and other structures within the City. Such standards are necessary to protect resident's health, safety, and general welfare. City Development Code, 18.1. Here, the substantial and undisputed evidence presented to the Board was of numerous Code violations at a multi-unit rental property that posed potential threats to residents, visitors and the public at large. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 38, 39, 41, 45); (Doc. 51, Ex. 19, Photos. From Aug. 27, 2015 Hearing); (Doc. 51., Ex. 9, Trans. Aug. 27, 2015 Hearing, 2:6-3:22; 6:17-19; 7:19-25; 8:4-16, 23-25; 9:1-5, 10-12). The fact that there was not a concrete injury is something to be grateful for, not a basis to say that the violations were harmless and therefore the fine was disproportionate.

### B. Plaintiff is not entitled to judgment on Count II because the undisputed record shows constitutionally adequate process

#### i. Plaintiff received notice, two hearings and adjudication before any fine or lien

Procedural due process requires notice and a real opportunity to be heard at a meaningful time and in a meaningful manner. *Keys Citizens For Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001). In the code-enforcement setting, that means notice of the violations, an opportunity to contest them before the board, and notice and an opportunity to be heard before a fine or lien attaches. *City of Fort Lauderdale v. Scott*, 888 F. Supp. 2d 1279, 1292 (S.D. Fla. 2012). Plaintiff received all of it. The City issued a Notice of Violation specifying ten conditions. Plaintiff appeared at the August 27, 2015 hearing, was free to present evidence and cross-examine, and did not dispute the violations. A second hearing followed before the fine was finally ordered. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 32-35, 38, 41, 50-52, 54-55). "[B]efore any lien attached," Plaintiff had notice of the violations, a hearing at which it could contest them, and available judicial review — "a paradigm of due process". *Lindbloom v. Manatee Cnty.*, No. 818CV02642T02AEP, 2019 WL 2503145, at 6 (M.D. Fla. June 17, 2019).

Plaintiff argues in its motion that notice that fails to explain how to contest a deprivation is inadequate. However, Plaintiff admits receiving both orders, which explicitly informed him that fines would accrue daily until compliance. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 55); (Doc. 61, Ex. 6, Pl.'s Resp. to Def.'s

Reqs. For Admis., No. 4-5). They also explicitly informed him of his ability to appeal the order and his duty to inform the City once compliance was achieved. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 50). The notice was not lacking.

Plaintiff cites to *Jones v. Flowers*, for the proposition that an owner's knowledge that a debt is growing is no substitute for notice of what the government will do about it. 547 U.S. 220, 232, 233 (2006). *Jones* is distinguishable. In *Jones*, the court rejected the defendant's argument that inquiry notice of a delinquent tax bill was sufficient to appraise plaintiff of the pending tax sale. Here, there was actual notice given and received by Plaintiff. The orders entered as to the Code violations and undisputedly received by Plaintiff, explicitly informed it that failure to pay the daily accruing fine would result in a lien and foreclosure. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 54).

Plaintiff also cites to *Massey v. Charlotte County*, as a case holding that a code enforcement board denied due process by imposing fines without an opportunity to test the findings on which the amount depended. 842 So. 2d 142, 144, 145, 146 (Fla. Dist. Ct. App. 2003). Here, unlike in *Massey*, the City sent, and Plaintiff received notice of both hearings and had the opportunity to contest the final, per day fine amount before it was imposed. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 37, 38, 41, 51).

#### ii. No additional notice or hearing is required as a daily fine accrues

Plaintiff's core due process theory is that it was entitled to fresh notice and a new hearing each day as the fine accrued. Courts in this District have squarely rejected that theory. Under Fla. Stat. § 162.09(1), once the board finds a violation, "a hearing shall not be necessary for issuance of the order imposing the fine". *Ficken v. City of Dunedin, Fla.*, No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408, at 17 (M.D. Fla. Apr. 26, 2021). The continuing accrual of a per diem fine after the adjudicating order does not require new process, because "accrual is distinct from imposition". *Id.* at 18.

Plaintiff repeatedly mischaracterizes the fine accrual and foreclosure sale as the "deprivation" at issue in this case. This is inaccurate. It is the initial imposition of the fine that constitutes the deprivation. The aggregate lien amount and foreclosure are all remedial procedures for the governmental entity to enforce the properly imposed fine. This proposition aligns with the statutory scheme and supporting case law. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F. 3d 1370, 1379 (11th Cir. 2019) (A section 162.11 appeal satisfies due process because a reviewing court "has the power to remedy any procedural deficiencies and cure violations of due process".).

A property owner's "suggestion that he is entitled to a special magistrate hearing each day the fines accumulate is untenable and unnecessary under both section 162.09, Florida Statutes[,] and due process"; "it is the enforcement board['s] … order that is appealed, not the ultimate assessment of the fines".

*Lindbloom v. Manatee Cnty.*, No. 818CV02642T02AEP, 2019 WL 2503145, at 6 n.5 (M.D. Fla. June 17, 2019).

The balancing of interests confirms it. The private interest must be weighed against the fact that Plaintiff had actual notice of the violations and the accruing fine from the outset and made a deliberate choice not to appeal or seek timely relief. (Doc. 51, Stmnt. of Undisputed Mat. Facts, 32-35, 37, 38, 41, 50-57); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1970). The risk of erroneous deprivation is low where, as here, notice and a hearing preceded the adjudicating order and the fine did not issue until the Board ruled; and "the probable value of additional or substitute safeguards is also minimal," while requiring repeated notice and hearings as a fine runs would burden the City and invite "relitigat[ion] of settled findings." *Id.* at 347-348; *Ficken v. City of Dunedin, Fla.*, No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408, at 18 (M.D. Fla. Apr. 26, 2021). The violations never changed and no new violation was ever cited; the single, adjudicated fine simply continued to accrue by operation of law until Plaintiff complied.

Plaintiff undisputedly received notices of both hearings and failed to contest the fine, despite being aware of his opportunities to do so. Further, requiring the City to provide daily notice and hearing, periodic accrual notices, incremental compliance reviews and/or post-judgment reduction hearings would impose a substantial administrative burden and completely undermine the enforcement framework the Legislature created, which was designed to create strong incentives for prompt compliance. *Mathews,* 424 U.S. at 347-348. Similarly, reduction of

daily fines as individual repairs are completed would discourage the expedient resolution of all violations, in direct contradiction to the fines' main objective of encouraging and achieving compliance. Plaintiff received over and above what was legally required for due process in the code enforcement context.

#### iii. Florida's section 162.11 appeal is an adequate remedy that Plaintiff did not use

A procedural due process claim under section 1983 "is not complete" where the State provides an adequate means to remedy the alleged deprivation; "the state may cure a procedural deprivation by providing a later procedural remedy," and the claim fails whether or not the plaintiff used it. *Ficken v. City of Dunedin, Fla.*, No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408, at 12 (M.D. Fla. Apr. 26, 2021). Florida's section 162.11 appeal is such a remedy: it affords a plenary circuit-court appeal as of right, on which the court may address "all errors … jurisdictional, procedural, and substantive". *Garate v. Town of Sw. Ranches*, No. 24-CV-62089, 2025 WL 2933895 (S.D. Fla. July 28, 2025). Courts in this District and the Southern District have repeatedly dismissed code-enforcement due process claims — including claims that the city failed to hold a hearing to fix the fine amount before foreclosure — because section 162.11 supplied an adequate remedy. *Id.* at 5. A post-deprivation judicial remedy is "all the process that is due" in these circumstances. *Carcamo v. Miami-Dade Cnty.*, 375 F.3d 1104, 1106 n.4 (11th Cir. 2004).

Plaintiff admits it never appealed. (Doc. 52, Stmnt. of Undisputed Mat. Facts, 9); It argues the appeal window closed in 2015, before the SOP, the foreclosure, and the judgment, so it was “too late” to challenge later events. That argument fails for two reasons. First, the gravamen of both counts is the fine fixed by the 2015 orders; the daily rate Plaintiff now calls excessive was established by the order, and the aggregate is merely a mathematical calculation of that rate over time. Plaintiff could have raised the amount, the single-fine procedure, and the absence of any reduction mechanism in a timely 2015 appeal — indeed, the Second District held in the related foreclosure litigation that Plaintiff waived its state-constitutional challenges by failing to do so. (Doc. 52, Stmnt. of Undisputed Mat. Facts, 26). Second, to the extent Plaintiff complains about the foreclosure, that too arose from orders and judgments Plaintiff could have, and did challenge through the ordinary appellate process. (Doc. 52, Stmnt. of Undisputed Mat. Facts, 26). Plaintiff cannot convert its own failure to use an adequate state remedy to dispute the daily fine amount into a federal due process violation.

Plaintiff’s reliance on *Ross v. City of Orlando*, is misplaced. 141 F. Supp. 2d 1360, 1364–1365 (M.D. Fla. 2001). *Ross v. City of Orlando* held only that a plaintiff need not exhaust the section 162.11 appeal before suing under section 1983; it treated the failure to appeal as a non-exhaustion question under *Patsy* and did not address the distinct, controlling principle that an adequate state remedy renders a procedural due process violation incomplete. *Id.* at 1364–1365; *Patsy v. 1365 Board of Regents of the State of Florida,* 457 U.S. 496, 500 (1982). The cases that

do apply that principle to Chapter 162 — *Ficken v. City of Dunedin, Fla.,* and *Garate v. Town of Sw. Ranches*— hold that the availability of the section 162.11 appeal defeats the claim. Exhaustion and adequacy of remedy are "conceptually distinct," and it is the adequacy principle, not exhaustion, that governs here. *Ficken v. City of Dunedin, Fla.,* No. 8:19-CV-1210-CEH-SPF, 2021 WL 1610408 (M.D. Fla. Apr. 26, 2021); *Garate v. Town of Sw. Ranches,* No. 24-CV-62089, 2025 WL 2933895 (S.D. Fla. July 28, 2025).

**iv. Discretionary fine reduction is not a protected entitlement**

Plaintiff's remaining theory is that the City led it to expect a reduction, then foreclosed that possibility through an internal SOP it never disclosed[2]. Plaintiff does not state a due process violation.

In the municipal code enforcement process, the state law remedy is found in section 162.11, Florida Statutes. Plaintiff attempts to conflate the City's discretionary reduction program as a state remedy, whose denial resulted in a violation of its due process rights. This is plainly incorrect and all argument regarding reduction is a calculated attempt to mislead and misdirect this Court.

The remedy for any grievance about the fine — a plenary appeal to the circuit court — is "established by published, generally available state statute[ ]". *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999); § 162.11 Fla. Stat. A municipality need not give individualized notice of remedies that are set out in public law. *Id.*

[2] All of the City's internal operating procedures, including the foreclosure SOP, are public records as a matter of law. Chapter 119, Laws of Florida.

In all events, Plaintiff's own authority, *Massey v. Charlotte Cnty.*, 842 So. 2d 142 (Fla. 2d DCA 2003), illustrates that the remedy for a claimed inability to contest the fine amount is the section 162.11 appeal — the very process Plaintiff forwent. *Garate v. Town of Sw. Ranches,* No. 24-CV-62089, 2025 WL 2933895 (S.D. Fla. July 28, 2025).

Notwithstanding the above, fine mitigation under Chapter 162 is discretionary, not mandatory; a municipal policy that limits or forecloses mitigation is "merely a request," and "nothing … mandates that the [City] must give" any reduction. *Id.* at 9, 10. Due process protects the adequacy of process attending a deprivation, not entitlement to a particular discretionary outcome. Because Plaintiff had no protected entitlement to a reduction, the City's failure to narrate the terms of its internal reduction and settlement procedure did not deprive Plaintiff of any constitutionally cognizable interest.

While Plaintiff argues that the City took money for permits and inspections aimed at a goal the City knew was unreachable, due to the fact that the opportunity for reduction ended upon the filing of a foreclosure action, this argument fails at every level. First, the City Building Department could not refuse a permit to Plaintiff based on the status of the Code enforcement action. (Doc. 52, Stmnt. of Undisputed Mat. Facts, 42). Second, the goal was always to encourage compliance with the City Code. (Stmnt. of Undisputed Mat. Facts, 3, 14, 15). Permits and inspections were necessary to achieve that goal. Third, the case law Plaintiff attempts to use to support its argument is misplaced and clearly distinguishable.

*Raley v. Ohio*, 360 U.S. 423 (1959), involves the state informing witnesses that they could invoke their right against self-incrimination and then charging them with contempt after they invoked the right. The case is clearly inapplicable to the facts at hand.

A reduction procedure is not required to provide adequate notice and a meaningful opportunity to be heard under the Fourteenth Amendment. The process that was due to Plaintiff was provided by the City.

## III. Conclusion

Based upon the foregoing facts and legal authority, the City respectively requests that Plaintiff, DJB Rentals, LLC Motion for Partial Summary Judgment be denied.

Dated: November 25, 2026

*s/ Jamie A. Kilpatrick*
Elizabeth W. Neiberger
FL Bar No. 70102
BRYANT MILLER OLIVE P.A.
One S.E. Third Avenue, Suite 2200
Miami, FL 33131
(305) 374-7349 (Tel)
(305) 374-0895 (Fax)
eneiberger@bmolaw.com
akilpatrick@bmolaw.com
*Lead Counsel for Defendant, City of Largo*

Jamie A. Kilpatrick
FL Bar No. 103267
BRYANT MILLER OLIVE P.A.
400 North Tampa Street, Suite 1600
Tampa, FL 33602
(813) 273-6677 (Tel)
(813) 223-2705 (Fax)
jkilpatrick@bmolaw.com

smcgee@bmolaw.com

*Attorneys for Defendant, City of Largo*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through the clerk of the court by using the CM/ECF system, on November 25, 2026, on all counsel or parties of record on the Service List below.

*s/ Jamie A. Kilpatrick*
Jamie A. Kilpatrick

## SERVICE LIST

Johanna B. Talcott
Pacific Legal Foundation
4440 PGA Blvd.
Suite 307
Palm Beach Gardens, FL 33410
561-691-5000
Fax: 916-419-7747
Email: jotalcott@pacificlegal.org
*Lead Counsel for Plaintiff*