**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DJB RENTALS, LLC,

Plaintiff,

v.

CITY OF LARGO, FLORIDA,

Defendant.

Civil Action No.
8:25-cv-1221-SDM-CPT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
RESPONSE TO THE CITY'S STATEMENT OF FACTS .......... 2
ARGUMENT .......... 7
I. The City Is Not Entitled to Judgment on Count I .......... 7
A. A Fine Imposed to Compel Compliance Is Punishment .......... 7
B. The Fine Is the $585,500 the City Imposed .......... 11
C. The Statutory Cap Does Not Make This Fine Constitutional .......... 14
D. The Fine Was Grossly Disproportional to the Offense .......... 16
E. Section 162.11 Does Not Bar Count I .......... 18
II. The City Is Not Entitled to Judgment on Count II .......... 20
A. The 2015 Hearings Were Not Process for Later Deprivations .......... 20
B. The City Closed the Reduction Process Without Telling DJB .......... 21
C. The *Mathews* Factors Favor DJB .......... 23
D. Section 162.11 Was Not an Adequate Remedy .......... 24
CONCLUSION .......... 25
CERTIFICATE OF SERVICE .......... 27

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Austin v. United States*,
509 U.S. 602 (1993) .......... *passim*

*Bee's Auto, Inc. v. City of Clermont*,
927 F. Supp. 2d 1318 (M.D. Fla. 2013) .......... 25

*Brevard Cnty. v. Obloy*,
301 So. 3d 1114 (Fla. 5th DCA 2020) .......... 18

*Burnett v. Grattan*,
468 U.S. 42 (1984) .......... 19

*City of W. Covina v. Perkins*,
525 U.S. 234 (1999) .......... 22

*Club Madonna, Inc. v. City of Miami Beach*,
924 F.3d 1370 (11th Cir. 2019) .......... 24

*Coe v. Armour Fertilizer Works*,
237 U.S. 413 (1915) .......... 21

*Conley v. City of Dunedin*,
No. 8:08-cv-01793-T-24-AEP, 2010 WL 146861
(M.D. Fla. Jan. 11, 2010) .......... 12, 24

*Cotton v. Jackson*,
216 F.3d 1328 (11th Cir. 2000) .......... 24

*Dewees v. United States*,
272 F. Supp. 3d 96 (D.D.C. 2017) .......... 9

*DJB Rentals, LLC v. City of Largo*,
373 So. 3d 405 (Fla. 2d DCA 2023) .......... 21, 25

*Duisberg v. City of Austin*,
No. 07-20-00171-CV, 2020 WL 6122951
(Tex. App.—Amarillo Oct. 16, 2020) .......... 12

*Felder v. Casey*,
487 U.S. 131 (1988) .......... 19

*Ficken v. City of Dunedin*,
No. 21-11773, 2022 WL 2734429 (11th Cir. July 14, 2022) .................. 11–12, 25

*Grant v. Zorn*,
107 F.4th 782 (8th Cir. 2024) .................................................................. 16

*Hardin v. Monroe Cnty.*,
64 So. 3d 707 (Fla. 3d DCA 2011) .......................................................... 18

*Helvering v. Mitchell*,
303 U.S. 391 (1938) ............................................................................... 8–9

*Huntington v. Attrill*,
146 U.S. 657 (1892) ................................................................................ 10

*Innova Inv. Grp., LLC v. Vill. of Key Biscayne*,
No. 21-11877, 2024 WL 2748480 (11th Cir. May 29, 2024) ................. 11, 18–19

*Kirby v. City of Archer*,
790 So. 2d 1214 (Fla. 1st DCA 2001) ...................................................... 18

*Kokesh v. SEC*,
581 U.S. 455 (2017) ............................................................................ 7, 10

*Kupke v. Orange Cnty.*,
293 F. App'x 695 (11th Cir. 2008) ............................................................ 25

*KYD, Inc. v. United States*,
836 F. Supp. 2d 1410 (Ct. Int'l Trade 2012) .......................................... 9–10

*Landa v. United States*,
153 Fed. Cl. 585 (2021) .............................................................................. 9

*Lindbloom v. Manatee Cnty.*,
No. 8:18-cv-2642-T-02AEP, 2019 WL 2503145
(M.D. Fla. June 17, 2019),
*aff'd*, 808 F. App'x 745 (11th Cir. 2020) ............................................. 12, 25

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......................................................................... 20, 25

*Marfut v. City of N. Port*,
No. 8:08-cv-2006-T-27-EAJ, 2009 WL 790111 (M.D. Fla. Mar.
25, 2009), *aff'd*, No. 09-13790, 2010 U.S. App. LEXIS 12365
(11th Cir. June 16, 2010) .......................................................................... 19

*Martinez v. City of Lantana*,
410 So. 3d 15 (Fla. 4th DCA 2025) ............................................................. 18

*Massey v. Charlotte Cnty.*,
842 So. 2d 142 (Fla. 2d DCA 2003)........................................................20–21

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........................................................................................23

*McKinney v. Pate*,
20 F.3d 1550 (11th Cir. 1994) (en banc) .......................................................24

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978) ............................................................................................22

*Moustakis v. City of Fort Lauderdale*,
338 F. App'x 820 (11th Cir. 2009)...........................................................11–13

*Newell Recycling Co. v. EPA*,
231 F.3d 204 (5th Cir. 2000) .......................................................................... 14

*Patsy v. Bd. of Regents of Fla.*,
457 U.S. 496 (1982)................................................................................ 19, 24

*Peralta v. Heights Med. Ctr., Inc.*,
485 U.S. 80 (1988) .......................................................................................... 21

*Pimentel v. City of Los Angeles*,
115 F.4th 1062 (9th Cir. 2024) ....................................................................... 16

*Pung v. Isabella Cnty.*,
609 U.S. 30 (2026)................................................................................. 13–14

*Robson 200, LLC v. City of Lakeland*,
593 F. Supp. 3d 1110 (M.D. Fla. 2022)..............................................11–12, 15

*Ross v. City of Orlando*,
141 F. Supp. 2d 1360 (M.D. Fla. 2001) ........................................................ 19

*Sw. Tel. & Tel. Co. v. Danaher*,
238 U.S. 482 (1915) ..........................................................................................11

*Thomas v. Cnty. of Humboldt*,
124 F.4th 1179 (9th Cir. 2024)..........................................................................17

*Thompson v. Comm'r*,
148 T.C. 59 (2017) ........................................ 8–9

*United States v. 817 N.E. 29th Drive*,
175 F.3d 1304 (11th Cir. 1999) ........................................ 15, 18

*United States v. Bajakajian*,
524 U.S. 321 (1998) ........................................ *passim*

*United States v. Chaplin's, Inc.*,
646 F.3d 846 (11th Cir. 2011) ........................................ 14, 16

*United States v. Halper*,
490 U.S. 435 (1989) ........................................ 7

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993) ........................................ 23

*United States v. Niksich*,
177 F.4th 1279 (11th Cir. 2026) ........................................ 14

*United States v. Schwarzbaum*,
127 F.4th 259 (11th Cir. 2025) ........................................ 7–9, 13

*United States v. Ursery*,
518 U.S. 267 (1996) ........................................ 8

*United States v. Viloski*,
814 F.3d 104 (2d Cir. 2016) ........................................ 8

*United States v. Ward*,
448 U.S. 242 (1980) ........................................ 8

*Williams v. Reed*,
604 U.S. 168 (2025) ........................................ 25

*Wilson v. Cnty. of Orange*,
881 So. 2d 625 (Fla. 5th DCA 2004) ........................................ 19

*Yates v. Pinellas Hematology & Oncology, P.A.*,
21 F.4th 1288 (11th Cir. 2021) ........................................ 15, 18

*Zinermon v. Burch*,
494 U.S. 113 (1990) ........................................ 25

## Constitutional Provisions

U.S. Const. amend. VIII .......................................................................... *passim*

U.S. Const. amend. XIV............................................................................ 7

## Statutes

City of Largo Code of Ordinances § 9-110 ........................................................ 21

City of Largo Code of Ordinances § 9-74........................................................ 24

Fla. Stat. § 162.02 .................................................................................. 10

Fla. Stat. § 162.09(2)(a)............................................................................ 2

Fla. Stat. § 162.09(2)(b)............................................................................15

Fla. Stat. § 162.09(3) ............................................................................... 2

Fla. Stat. § 162.10.................................................................................... 2

Fla. Stat. § 162.11 ...................................................................18–19, 24–25

## INTRODUCTION

The facts that decide this case are common ground. The City of Largo ("City") fined DJB Rentals, LLC ("DJB") $250 a day for code violations on a rental property ("Property"), and over six years the fine grew to $585,500. Doc. 1-13. The City foreclosed and sold the Property at auction for $99,100, which the Clerk paid to the City. Doc. 51-3 at 82:3–14. The City agrees the fine's purpose was to make DJB comply. City's Statement of Undisputed Material Facts ("City SOF"), Doc. 51 ¶¶ 14–15; Doc. 51-3 at 7:19–8:13, 70:23–25. But once DJB complied, the City would accept no less than the full fine. Doc. 51-3 at 21:14–16, 41:1–4, 83:12–16.

The City asks the Court to accept three propositions of law. All fail. First, the City claims a fine meant to compel compliance is not punishment. Supreme Court precedent holds the opposite: A sanction that serves to deter is punishment. Second, the City maintains that the Court may consider only the $250 daily rate. But the Eighth Amendment measures the fine imposed. The City sued on one sum, obtained judgment for one sum, and foreclosed on the Property. Third, the City says DJB should have raised its claims in a 30-day appeal from the 2015 orders of the Code Enforcement Board ("Board"). But the events at the center of this case came years later. The City adopted its foreclosure standard operating procedure ("SOP") in 2019, sued to foreclose in 2021, obtained judgment in 2022, and sold the Property in 2023. This Court rejected the City's procedural-bar argument at the pleading stage, Doc. 28, and the City has offered no reason to revisit that ruling.

The City's motion should be denied.

## RESPONSE TO THE CITY'S STATEMENT OF FACTS

DJB accepts the City SOF as the record states those facts. The following paragraphs of the City SOF are undisputed: 1–8; 10; 12; 14–19; 26–27; 30; 32–35; 37–38; 40–41; 45–46; 48–51; 54–57; 64; 69. Other paragraphs go further than the material cited. For those, DJB states what the cited material actually shows and adds related facts supported by the record.

9. Undisputed that section 162.09(2)(a) caps a fine for a first violation at $250 per day. The statute does not limit the total fine or reflect any finding that $250 per day is proportional to a particular violation.

11. Undisputed that a fine accrues until the owner complies or the City obtains judgment. Fla. Stat. § 162.09(3). Disputed that no lien may "accrue" for more than twenty years. The statute limits how long a lien may "continue" unless the City sues; it does not stop the fine from accruing. Fla. Stat. § 162.10.

13. Undisputed. The rule that ends reductions once a foreclosure is filed comes from the internal SOP, not the City of Largo Code of Ordinances ("Code"). Doc. 51-22 at 3; Doc. 51-3 at 24:17–22, 50:16–51:3. There was no day on which DJB was both in full compliance and able to seek a reduction. Doc. 51-3 at 41:1–4.

20. Undisputed that Donald Bourgeois, DJB's sole owner ("Don"), testified as quoted. But he also testified that he researched the Florida Statutes "[a]s far as homeowners is concerned." Doc. 51-5 at 46:22–23.

21. Undisputed that Don walked the Property before the purchase, identified needed "[c]osmetic work, trim work, carpeting, upgrades," and hired an

inspection company to look for "anything major, mostly structural." Doc. 51-5 at 26:2–18, 27:20–22, 44:15–25.

22. Undisputed that Don testified the Property was old and needed improvements, Doc. 51-5 at 26:2–18; however, disputed that the cited testimony says what any third-party inspection revealed. Don testified that the inspection company found nothing major or structural. *Id.* at 45:1–5.

23. Undisputed that DJB bought the Property from the prior owner, who was also the mortgagee; however, the first sentence adopts City SOF ¶ 22's characterization, which is unsupported. Doc. 51-5 at 28:15–19, 45:1–5.

24. Undisputed that the cited conditions existed when DJB bought the Property in 2013. Doc. 51-5 at 37:19–22. Disputed that DJB made no repair efforts before 2015; DJB obtained a roof permit in October 2013. City SOF ¶ 28. Under that permit, Don stripped the back side of the main roof, replaced rotten sheathing, renailed it, and papered it in. Doc. 51-5 at 111:12–19.

25. Undisputed that Officer Jensen described the conditions as quoted and that a Board member remarked on safety. The City later testified that, for each condition fined, DJB's noncompliance caused the City no injury and that it knew of no injury to the public. Doc. 51-3 at 71:1–78:14.

28. Undisputed that the October 2013 roof permit expired before the work was completed. Disputed that no work was done. *See* response to ¶ 24.

29. Undisputed that Officer Jensen so reported. Don told the Board the decks looked "newer, pressure-treated" and he assumed they were built with

permits. Doc. 51-9 at 5:2–5. He testified that the stairs existed at purchase. Doc. 51-5 at 40:12–21.

31. Undisputed. Don's mother was then hospitalized in an intensive care unit. Doc. 51-5 at 39:16.

36. Undisputed that Officer Jensen so reported. Don told the Board that he met with two roofers and someone to address the boards and decks, and that he was applying to the City's Rental Rehabilitation Program. Doc. 51-9 at 4:25–5:8.

39. Undisputed that Officer Jensen so reported and that staff recommended $200 per day, not $250. Doc. 51-9 at 3:19–22. *See* response to ¶ 47.

42. Undisputed that Don told the Board he bought the Property "to fix it up" and learned he could not do the work himself because he was not a licensed contractor. Doc. 51-9 at 5:9–11. Disputed that the cited lines use the phrase "fix-up project" or even mention the construction of stairs. *See* response to ¶ 29.

43. Undisputed that Don told the Board he had learned he could not do the work himself. *See* response to ¶ 42.

44. Undisputed that Ms. Coffin asked the quoted question. Don's answer to that question was that he had obtained the roof permit as a homeowner and later learned that the City treated the Property as commercial. Doc. 51-9 at 6:8–16.

47. Undisputed that the Board imposed a fine of $250 per day beginning September 4, 2015. Doc. 51-20 at 2. Disputed that the cited transcript records any finding that the violations were a life-safety hazard or any reason for the amount. A member who moved for $300 per day was told the Board "[c]an't go above $250

for first violations." Doc. 51-9 at 12:3–15. The remarks the City cites at 8:23–9:1 concerned whether the fire marshal should inspect the Property. *Id.* at 8:23–9:12.

52. Undisputed that the hearing was held on September 24, 2015, and Officer Jensen's affidavit of noncompliance was presented.

53. Undisputed that the Board accepted the affidavit of noncompliance and entered the Second Order. Disputed that it did so based on Officer Jensen's testimony. The cited lines are a Board member's motion, and Officer Jensen spoke only to answer a question about business tax receipts. Doc. 51-11 at 3:10–23.

58. Undisputed, but not that DJB sat idle. The job was phased as money allowed. The first part "was completed," leaving the main roof "completely intact." Doc. 51-5 at 110:8–111:11. In June 2016, DJB added the garage roof to the permit. Doc. 51-3 at 54:16–55:6. By March 2017, all three buildings were reroofed. Doc. 51-3 at 53:4–19, 54:12–55:23.

59. Undisputed, but it is not merely an allegation. A contractor did the stair and landing work under that permit, and DJB paid him. Doc. 51-3 at 56:19–23; Doc. 51-5 at 114:3–9, 115:16–17.

60. Undisputed. DJB made repairs in stages as money allowed, starting with the roofs. Doc. 51-5 at 65:18–66:15, 116:22–117:7, 122:18–123:5.

61. Undisputed as to the permit dates, but disputed that the repairs were unrelated to the 2015 citation. The permit was to demolish a shed, Doc. 51-5 at 117:11–21, and Don testified that much of the rotting wood shown in the City's photographs was on the shed. *Id.* at 117:11–14, 148:18–20, 150:3.

62. Undisputed. After the judgment, DJB posted a $50,000 bond to stay the sale and rebuilt the deck and stairs. The City issued the permit as an "[e]mergency repair" and inspected the work. Doc. 51-5 at 123:2–5; Doc. 51-3 at 63:5–25, 65:15–66:2. The City certified the Property compliant on May 5, 2023, five months before the sale. Doc. 51-3 at 49:6–15.

63. Undisputed that Don did not look into the reduction process. The City's word "simply" obscures why. Don understood the City would forgive fines once the work was done, Doc. 51-5 at 85:8–9, 86:1–6, and the City concedes a code officer told him DJB could seek a reduction upon full compliance, Doc. 52-24 at 7.

65. Undisputed, but whether it was "in line with the applicable statutory scheme" is a legal question. The City calls its SOP "an internal SOP primarily," and the Commission never voted on it. Doc. 51-3 at 24:17–22, 68:22–69:1.

66. Undisputed. On April 7, 2021, DJB's contractor asked the City to reopen expired permits, and the City Manager signed a second foreclosure authorization the same day. Doc. 51-3 at 61:20–62:22; Doc. 52-20.

67. Undisputed that the foreclosure judgment was entered before the Property reached compliance. *See* response to ¶ 62.

68. Undisputed that the buyer bid $99,100 and later paid the mortgage judgment, back taxes, and utility charges she describes. On the City's figures, she paid about $419,000 in all to own the Property. The Clerk disbursed $99,100 to the City. Doc. 51-3 at 82:3–14. The cited testimony puts the back taxes at $35,290.27, not $25,284.02. Doc. 51-7 at 10:1–4.

## ARGUMENT

The City's motion offers several arguments, but they share a central premise: that a fine meant to make an owner comply is beyond constitutional review, whatever its size and however it was enforced. It is not. A fine that grew every day until it reached $585,500—and cost DJB the Property—is punishment the Eighth Amendment limits. And by the City's own testimony, there was never a day on which DJB was both in compliance and eligible for a fine reduction, whether before the Board or through settlement. That is not the process the Fourteenth Amendment requires. The City's motion fails as a matter of law on both counts.

### I. The City Is Not Entitled to Judgment on Count I

#### A. A Fine Imposed to Compel Compliance Is Punishment

The City calls the fine "purely remedial" because its purpose was compliance. Doc. 51 at 25–26. But that purpose makes the fine punitive. A civil sanction falls outside the Excessive Fines Clause only if it is "solely" remedial. One that "can only be explained as also serving either retributive or deterrent purposes, is punishment." *Austin v. United States*, 509 U.S. 602, 610 (1993) (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989)). "*Austin*'s 'solely remedial' test remains good law in the Eighth Amendment context." *United States v. Schwarzbaum*, 127 F.4th 259, 270 n.1 (11th Cir. 2025). And "[s]anctions imposed for the purpose of deterring infractions of public laws are inherently punitive." *Kokesh v. SEC*, 581 U.S. 455, 464 (2017). A fine that grows every day until the owner complies operates by deterrence. The City's designee said as much: the

Board sets the fine at "an amount that we think is going to cause the respondent to . . . be motivated to achieve compliance." Doc. 51-3 at 81:22–24. Motivating compliance is simply deterrence by another name.

A monetary sanction is remedial only if it compensates the government for a loss. *United States v. Bajakajian*, 524 U.S. 321, 329 (1998); *United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016). One with "no correlation to any damages sustained by society or to the cost of enforcing the law" is not remedial. *Austin*, 509 U.S. at 621 (quoting *United States v. Ward*, 448 U.S. 242, 254 (1980)). DJB's $585,500 fine compensated the City for nothing. The City testified that DJB's noncompliance caused it no injury. Doc. 51-3 at 71:1–78:14. The foreclosure judgment awarded $4,795 in costs and fees separate from the $585,500 in fines. Doc. 1-13. And the City's designee agreed that the fines "are a remedy" rather than something that "remediate[s]" anything. Doc. 51-3 at 81:25–82:2.

The City's authorities do not suggest otherwise. The City relies on *Helvering v. Mitchell*, 303 U.S. 391 (1938), a double jeopardy case whose standard is "no longer applicable in the Excessive Fines context." *Schwarzbaum*, 127 F.4th at 275. The Supreme Court has never understood the Excessive Fines Clause as "parallel to, or even related to, the Double Jeopardy Clause." *United States v. Ursery*, 518 U.S. 267, 286 (1996). Even if they were analogous, the *Helvering* penalty was remedial because it served "to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." 303 U.S. at 401. The same cannot be said here. *Thompson v. Commissioner*, 148 T.C. 59, 65 (2017),

rests on *Helvering* and another double jeopardy case. Its holding that a penalty's obvious deterrent purpose does not make it a fine, *id.*, contradicts this circuit's rule that deterrence "is punitive in nature." *Schwarzbaum*, 127 F.4th at 274.[1]

The City also cites trial court cases to argue that "regulatory compliance penalties" are remedial when "designed primarily to compensate the government for the costs of investigation and enforcement." Doc. 51 at 27. As explained above, the fines here are not designed primarily to compensate the government, so those cases are distinguishable. They also apply the wrong standard. *Landa v. United States* held that a Bank Secrecy Act penalty for an unreported foreign bank account was not a fine. 153 Fed. Cl. 585, 600 (2021). The Eleventh Circuit holds that such a penalty is a fine subject to the Eighth Amendment. *Schwarzbaum*, 127 F.4th at 274. And *Landa*'s proposition that incidental deterrence does not make a sanction punitive, Doc. 51 at 28, conflicts with *Austin* and *Schwarzbaum*, which treat a sanction as a fine unless it is "solely" remedial.

*Dewees v. United States* fails for the same reason. It required a "primarily" retributive or deterrent purpose before holding that a fixed $10,000 penalty for each missed filing was not a fine. 272 F. Supp. 3d 96, 100–01 (D.D.C. 2017). But even a primarily remedial sanction is a fine if it "serves as 'punishment even in part.'" *Schwarzbaum*, 127 F.4th at 271 (quoting *Bajakajian*, 524 U.S. at 332, 331 n.6). *KYD, Inc. v. United States* offers even less. 836 F. Supp. 2d 1410, 1414–15 (Ct.

---

[1] *Thompson* upheld its penalty in the alternative because it was "proportional to the harm caused." 148 T.C. at 67. The fine against DJB was not.

Int'l Trade 2012). After finding the claim waived, the court called an antidumping rate remedial even though it included a built-in increase meant to deter. *Id.* at 1413–15. It cited no excessive fines case, relying on earlier rulings in the same case and a double jeopardy decision. *Id.* at 1414–15.

The City's treatment of DJB after foreclosure further confirms that its fine was punitive. Chase Bergeron, the City's Community Standards Manager, described foreclosure as "one of the last tools we have in an effort to motivate a property owner to get their violations corrected." Doc. 51-2 at 8:16–17, 74:4–8. Yet, after judgment, the City's policy is to collect the full fine, compliance or not. Doc. 51-22 at 3–4; Doc. 51-3 at 21:14–16. A fine that compliance can no longer affect does not operate as an incentive. All that remains is retribution, the other purpose *Austin* identifies with punishment. 509 U.S. at 610.

The City's remaining points fare no better. It argues that the statute's "administrative" label makes the fines remedial. Doc. 51 at 28–29. But the statute also calls them "noncriminal penalties," Fla. Stat. § 162.02, and a penalty is "punishment, whether corporal or pecuniary." *Kokesh*, 581 U.S. at 461 (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). As the City concedes, "the label attached" does not control. Doc. 51 at 26. The City also argues that the foreclosure was simply a collection mechanism. *Id.* at 29. But collecting a punitive fine by foreclosure does not make it remedial, and the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind." *Austin*, 509 U.S. at 609–10.

To argue that the fine against DJB is not a fine, the City relies entirely on cases outside the code enforcement context, involving tax fraud, undisclosed tax shelters, federal reporting violations, and a tariff on underpriced imports. None involve a municipal code enforcement fine. The cases that do, like *Moustakis*, *Ficken*, and *Robson*, which the City cites for its other arguments, *see* Doc. 51 at 30–35, treat fines imposed under Chapter 162 as subject to the Excessive Fines Clause.

**B. The Fine Is the $585,500 the City Imposed**

The City asks the Court to measure the fine one day at a time, considering only the $250 rate, not the accrued $585,500. Doc. 51 at 30–32. But the Clause speaks of fines "imposed," and what the City imposed was a judgment for $590,295 and the loss of the Property. Doc. 1-13; Doc. 51-3 at 82:3–14. The City recorded one lien, sued on one sum, and collected at one sale. City SOF ¶¶ 66–68. Its SOP sets settlement terms as percentages of the total, and each of its 27 reductions reduced an aggregate amount. Doc. 51-22 at 4; Doc. 52-25 at 3–5. The Court should measure the fine the same way. *Cf. Innova Inv. Grp., LLC v. Vill. of Key Biscayne*, No. 21-11877, 2024 WL 2748480, at *3 (11th Cir. May 29, 2024) (excessive fines claim over daily code fines accrued when the owner "could have calculated the aggregate amount"); *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490–91 (1915) ($6,300 in accumulated daily penalties was "arbitrary and oppressive").

The City's contrary citations do not control and are unpersuasive. Most are unpublished and all are distinguishable. *Moustakis v. City of Fort Lauderdale* affirmed the dismissal of a complaint that did "not allege . . . that a $150 per day

fine for violating the Code is excessive," and "alleged [no] facts" showing that the total was. 338 F. App'x 820, 822 (11th Cir. 2009). It describes no effort to comply for 14 years. *Id.* at 821–22. *Ficken v. City of Dunedin* involved fines totaling $28,500 against a repeat violator who attended neither of his hearings. No. 21-11773, 2022 WL 2734429, at *1 (11th Cir. July 14, 2022). In *Lindbloom v. Manatee County*, two $50 daily fines, capped at $20,000, came to under $5,000. No. 8:18-cv-2642-T-02AEP, 2019 WL 2503145, at *8 (M.D. Fla. June 17, 2019), *aff'd*, 808 F. App'x 745, 747 (11th Cir. 2020). None ended in a foreclosure sale.

*Robson 200, LLC v. City of Lakeland* treated "the daily refusal to repair" as the unit of prosecution because the owners "knowingly disregarded the code violations." 593 F. Supp. 3d 1110, 1123 (M.D. Fla. 2022). That same premise underlies *Moustakis*, which held that a $700,000 total was "literally, directly proportionate to the offense" because "[t]he size of the fine [was] a function of the daily repetition . . . of the offense over a 14-year period." 338 F. App'x at 822; *see also Conley v. City of Dunedin*, No. 8:08-cv-01793-T-24-AEP, 2010 WL 146861, at *5 (M.D. Fla. Jan. 11, 2010) (owners' "refusal to comply" did not make the daily fines excessive); *Duisberg v. City of Austin*, No. 07-20-00171-CV, 2020 WL 6122951, at *4 (Tex. App.—Amarillo Oct. 16, 2020) (owner's "knowing inaction").

The City says courts "consistently" measure the daily fine. Doc. 51 at 30. *Robson*, the case it quotes, said courts "ordinarily" use the daily amount "when the offender knowingly violates the law." 593 F. Supp. 3d at 1122. DJB was not that offender. It was repairing from the start. It pulled a roofing permit two days before

the Second Order, had the stairs and landings repaired under a 2016 permit, and reroofed all three buildings by March 2017. City SOF ¶¶ 53, 58; Doc. 51-3 at 53:4–19, 54:12–55:23, 56:19–23. This was no "daily repetition" of the same offense. *Moustakis*, 338 F. App'x at 822. The offense shrank with each repair; the fine did not. Doc. 51-3 at 78:15–25. It tracked the calendar, not DJB's conduct.[2]

The City warns that measuring the total rewards owners who let fines grow. Doc. 51 at 31–32. But DJB was not the one who waited. It pulled permits and made repairs while the fine ran. The City decided when to collect, waiting nearly six years to foreclose, a delay it attributes to the timing of its foreclosure program. Doc. 51-3 at 23:11–24:2. In the City's words, its older cases "had been just sitting, as fines continued to accrue." City SOF ¶ 65. The City's preferred approach would not stop owners from letting fines grow. But it would let cities do so with impunity.

The City also argues that the auction price was not punishment, reading *Pung v. Isabella County*, 609 U.S. 30, 33 (2026), to hold that a foreclosure sale for less than market value cannot violate the Clause. Doc. 51 at 38. But *Pung* was a tax case. The owner argued that selling the property below market value to collect an unpaid tax was itself a fine, and the Court held that "following a tax sale, the Eighth Amendment Excessive Fines Clause does not require the government to return more than the surplus proceeds." *Pung*, 609 U.S. at 33. Here, the debt the City

---

[2] In *Schwarzbaum*, the court cited *Moustakis* in support of its decision to consider penalties for each unreported foreign bank account separately—violation by violation—rather than the aggregate total fine for all separate violations. 127 F.4th at 276, 281. That approach followed from a statute that makes each unreported account a separate violation and from penalties tied to the amount hidden in each account. *Id.* A daily code fine has no such link.

foreclosed was the fine itself, which DJB asserts was excessive. *Pung* does not suggest that a foreclosure to collect such a debt falls outside the Clause. Indeed, it reaffirmed that a forfeiture of property "can be a 'fin[e]' for purposes of the Eighth Amendment if it serves 'in part to punish.'" *Id.* at 43–44 (quoting *Austin*, 509 U.S. at 610). DJB does not ask the Court to impose a rule requiring market-value foreclosure sales. The sale matters because it shows the severity of the penalty. The fine consumed DJB's only asset. Doc. 52-1 ¶ 2. The City's evidence about the buyer confirms the point, as she paid about $419,000 in all to own the Property. City SOF ¶ 68. Whether the City intended the Property to sell so cheaply, City SOF ¶ 69, has little bearing on whether the fine was proportional to the offense. If the underlying fine that justified the foreclosure was excessive, the City was not entitled to foreclose and sell the Property at any price.

### C. The Statutory Cap Does Not Make This Fine Constitutional

The City argues that a fine within the statutory range is constitutional "[n]o matter how excessive" it may appear. Doc. 51 at 33 (quoting *Newell Recycling Co. v. EPA*, 231 F.3d 204, 210 (5th Cir. 2000)).[3] That is not the rule in this circuit, where the presumption is "strong" but rebuttable. *See United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011). Nor could it be after *Bajakajian*, which held a forfeiture grossly disproportional although Congress required forfeiture of the full amount. 524 U.S. at 326, 337–40.

[3] The Eleventh Circuit has not treated statutory penalties that way. It has since remanded *Schwarzbaum*-type penalties for a record on excessiveness, including the "harm caused by defendant action." *United States v. Niksich*, 177 F.4th 1279, 1290 (11th Cir. 2026).

The presumption also does not fit this fine. It originates in *United States v. 817 N.E. 29th Drive*, a civil forfeiture case, where it rested on the work of "two very competent bodies": Congress, which set the maximum fine, and the Sentencing Commission, a judicial entity whose guidelines are "designed to proportion punishments to crimes with even greater precision than criminal legislation." 175 F.3d 1304, 1309–10 (11th Cir. 1999). No comparable judgment stands behind this fine. The City says the legislature "determined that a daily fine not exceeding $250 . . . is 'proportional' to the harm caused." Doc. 51 at 33–34. But the statutory ceiling applies to every first violation of every local code in Florida, serious or trivial. City SOF ¶ 9. It says nothing about these violations or this $585,500 fine. Presuming such a fine constitutional "delegates the Article III judicial power to interpret and apply the law." *Robson*, 593 F. Supp. 3d at 1121; *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1318 (11th Cir. 2021) (Newsom, J., concurring) (likening the presumption to "letting the driver set the speed limit").

Nor did the Board supply the missing judgment here. The statute directs a board to consider the gravity of the violation, the actions taken to correct it, and any previous violations. Fla. Stat. § 162.09(2)(b). The City asserts that the Board "determined the violations constituted a life-safety hazard and warranted the maximum." Doc. 51 at 37. But the transcript records no such determination and no reason for the amount. Staff recommended $200 per day. Doc. 51-9 at 3:19–22. A member moved for $300, was told the Board "[c]an't go above $250," and changed her motion to $250. *Id.* at 12:3–15. Deference "does not command judicial

blindness to the arbitrary imposition of punitive fines," and courts "cannot fall back on reflexive deference" when the government cannot explain how it set the amount. *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1069–70 (9th Cir. 2024); *see also Grant v. Zorn*, 107 F.4th 782, 800 (8th Cir. 2024) (cautioning against undue deference). The $250 rate reflected what the Board believed the statute allowed, not a judgment about what these particular violations deserved.

**D. The Fine Was Grossly Disproportional to the Offense**

A fine violates the Clause if it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. The City addresses only three factors: whether the defendant is within the class the law targets, the penalties the legislature authorized, and the harm caused. Doc. 51 at 34–37. DJB does not contest the first, and Part I.C addresses the second. The City's argument about the third stops in August 2015, and the factors are not an "exclusive checklist." *Chaplin's*, 646 F.3d at 851 n.16. *Bajakajian* itself weighed the offender's "culpability relative to other potential violators." 524 U.S. at 339 n.14.

The record since 2015 shows little harm. The City relies on the code officer's hearing account. Doc. 51 at 36–37. But the City testified that for each condition fined, DJB's noncompliance caused it no injury and that it knew of none to the public. Doc. 51-3 at 71:1–78:14. Bergeron called the conditions other than the stairwells "[n]ot dangerous," and in May 2022 the City's chief inspector "walked and even jumped on the landings" and found them "stable." Doc. 51-2 at 43:15–18; Doc. 51-3 at 46:9–21. The City attributed the six-year wait to program timing, not

danger. Doc. 51-3 at 23:11–24:2. *Bajakajian* rested partly on the lack of any "articulable correlation to any injury suffered by the Government." 524 U.S. at 340. The Ninth Circuit relied on it in holding that owners plausibly alleged excessive penalties for offenses asserted to have "caused no harm beyond a technical lack of compliance." *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1194 (9th Cir. 2024).

DJB's culpability was low. *See Bajakajian*, 524 U.S. at 338–39. While the fine accrued, DJB repaired the stairs and landings, reroofed all three buildings, obtained permits for trim, soffit, and fascia repairs, and asked the City in April 2021 to reopen expired permits. Doc. 51-3 at 53:4–19, 54:12–55:23, 56:19–23, 59:15–60:4, 61:20–62:22. After the foreclosure judgment, it rebuilt the deck and stairs for $34,000 and Don sold a Vermont property to pay for that work and a $50,000 bond staying the sale. Doc. 51-5 at 122:10–12, 123:2–5; Doc. 52-32. The City suggests compliance took too long. But as shown above, the fine did not change as repairs were made, and the City knows of no case in which it declined to reduce a fine for an eligible owner. Doc. 51-3 at 14:22–15:2.

The City's treatment of other owners shows what it regards as a proportionate penalty. Since 2018, it has granted 27 fine reductions, cutting $2,158,950 in fines by 97 percent to $64,740. Doc. 52-25 at 3–5; Doc. 51-3 at 13:17–14:21. At 3760 East Bay Drive, fines of $631,500 were reduced to $2,322.11, and the City did not foreclose. Doc. 51-3 at 15:5–17:4. Bergeron would have been open to settling DJB's case for around $70,000. Doc. 51-2 at 133:13–21. Every owner who received a reduction was in compliance first. DJB reached the same

compliance, but the City did not reduce DJB's fine. Doc. 51-3 at 16:23–25, 17:9–13. Even if the City were correct that only the daily fine amount matters, its treatment of other owners suggests that DJB's daily fine should have been reduced to $7.50 per day, or three percent of the original fine.

Finally, the penalty was severe by any measure. The Property sold for $99,100, less than a quarter of its 2023 county-assessed value of $458,000. Doc. 29 ¶¶ 70, 73. It was DJB's only asset; its rent was DJB's only income. Doc. 52-1 ¶ 2. This circuit measures excessiveness by the offense, not the offender, *817 N.E. 29th Drive*, 175 F.3d at 1311, and the fine is grossly disproportional on that measure alone. DJB notes the loss of livelihood to preserve the issue. *See Bajakajian*, 524 U.S. at 335, 340 n.15; *Yates*, 21 F.4th at 1318–23 (Newsom, J., concurring).

**E. Section 162.11 Does Not Bar Count I**

The City finally argues that Count I is a "collateral attack" on the 2015 orders. Doc. 51 at 40–42. This Court rejected that argument at the pleading stage for the reasons stated in DJB's response. Doc. 28; Doc. 27 at 12–17. And the City's authorities apply a Florida rule barring later state-court challenges that could have been raised in a Section 162.11 appeal. *See Brevard Cnty. v. Obloy*, 301 So. 3d 1114, 1115 (Fla. 5th DCA 2020); *Kirby v. City of Archer*, 790 So. 2d 1214, 1215 (Fla. 1st DCA 2001); *Martinez v. City of Lantana*, 410 So. 3d 15, 17–18 (Fla. 4th DCA 2025) (as-applied Florida constitutional claim). Even that rule does not reach the enforcement orders that follow an unappealed order. *Hardin v. Monroe Cnty.*, 64 So. 3d 707, 710–11 (Fla. 3d DCA 2011). In *Innova*, the City's only federal case, the

district court called the excessive fines claims a collateral attack, but the Eleventh Circuit affirmed dismissal of the federal claim only as time-barred, applying Florida's waiver rule to the state constitutional claim. 2024 WL 2748480, at *3–5.

Nor can such a rule bar a federal claim. Section 1983 has no exhaustion requirement, *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982), and States "may no more condition the federal right to recover for violations of civil rights than bar that right altogether." *Felder v. Casey*, 487 U.S. 131, 144 (1988). This Court has held a Section 162.11 appeal unnecessary, citing the "paramount role that Congress has assigned to the federal courts to protect constitutional rights." *Ross v. City of Orlando*, 141 F. Supp. 2d 1360, 1364 (M.D. Fla. 2001); *see Burnett v. Grattan*, 468 U.S. 42, 50–51, 55 (1984) (rejecting a six-month state deadline); *Wilson v. Cnty. of Orange*, 881 So. 2d 625, 632–33 (Fla. 5th DCA 2004) (enforcement proceeding and Section 1983 suit "are different actions").

Count I attacks nothing the Board decided in 2015. It challenges a $585,500 fine and a foreclosure, neither of which existed when the appeal period ran. *See Marfut v. City of N. Port*, No. 8:08-cv-2006-T-27-EAJ, 2009 WL 790111, at *5–6 (M.D. Fla. Mar. 25, 2009) (owner who had not appealed daily fines could challenge the total, which "could not have been litigated . . . at the time of the hearings"), *aff'd*, No. 09-13790, 2010 U.S. App. LEXIS 12365 (11th Cir. June 16, 2010). The City calls the total "merely a mathematical calculation." Doc. 51 at 50–51. But in 2015, the multiplier depended on how long the City would wait to foreclose, on a reduction policy it had not yet written, and on repairs DJB had not yet made.

## II. The City Is Not Entitled to Judgment on Count II

The City's defense of Count II is that it followed Chapter 162 in 2015. Doc. 51 at 42–46. DJB accepts that it received the 2015 notices, appeared at the August 27 hearing, received both orders, and did not appeal. City SOF ¶¶ 33, 37–38, 51, 55–56. Count II concerns what happened afterward.

### A. The 2015 Hearings Were Not Process for Later Deprivations

Compliance with a state statute does not satisfy due process. Because "minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (cleaned up). Chapter 162 leaves gaps that due process must fill. *See Massey v. Charlotte Cnty.*, 842 So. 2d 142, 147 (Fla. 2d DCA 2003). An owner must have an opportunity to be heard on "whether the alleged violation continued, how long it continued, and whether there was any reason to reduce the per diem fine imposed in light of attempts by [the owners] to comply." *Id.*

The 2015 hearings addressed none of those questions, because none had yet arisen. The Board found violations and set a rate. For five and a half years, the fine grew past half a million dollars with no further notice or review. Doc. 52-24 at 6–7; Doc. 51-3 at 79:20–23; Doc. 1-13. In 2019, the City adopted an internal SOP that ended the reduction hearing once foreclosure was filed and required payment in full after judgment. Doc. 51-22 at 3–4; Doc. 51-3 at 24:17–22. Nor would the foreclosure court hear DJB's constitutional claims. The state appellate court

affirmed without reaching the merits, "express[ing] no opinion on the rectitude of the City's practices." *DJB Rentals, LLC v. City of Largo*, 373 So. 3d 405, 413–14 (Fla. 2d DCA 2023).

The City says DJB demands "a new notice and hearing for each day a fine accrues," and calls "patently false" the premise that each day was a new violation. Doc. 51 at 45–46. Yet the City's Code makes each day of noncompliance "a separate and distinct violation." Code § 9-110. And its Count I argument treats each day's $250 as a separate fine. Doc. 51 at 30–32. The City cannot hold both positions. If each day brought a separate fine, the City imposed more than 2,300 of them after its last hearing and gave no notice of any for five and a half years. If there was one fine, it was $585,500, and the question is whether DJB received process suited to a deprivation that large. DJB does not ask for daily hearings. Far less would do: periodic notice of the accruing total, notice of the rule ending the reduction process, and a chance to be heard on the total before the sale.

### B. The City Closed the Reduction Process Without Telling DJB

The City argues that a discretionary reduction process cannot support a due process claim. Doc. 51 at 47–48. But a reduction hearing was the City's only procedure for an owner to be heard on the accumulated amount, and due process requires such an opportunity. *Massey*, 842 So. 2d at 147. It is "no answer to say that . . . due process of law would have led to the same result." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87 (1988) (quoting *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)). The record shows what a hearing was worth. The

City granted reductions to eligible owners "99.9 percent of the time" and forgave about 97 percent of the fines in those cases. Doc. 51-1 at 56:9–16; Doc. 51-3 at 13:17–14:21. Without a hearing, DJB faced the full $585,500 and lost the Property.

The City says the process was unavailable "due to Plaintiff's own inaction." Doc. 51 at 47. The cause was an undisclosed rule. The City concedes a code officer told Don that DJB could seek a reduction once it reached compliance. Doc. 52-24 at 7. That was true under the Code, which set no time limit on the Board's reduction power. Doc. 51-3 at 50:16–51:3. The cutoff was in an internal 2019 SOP that was never put to a Commission vote or disclosed to DJB. *Id.* at 24:17–22, 43:4–17, 68:22–69:1. DJB's contractor asked to reopen permits in April 2021, two months before the foreclosure filing. *Id.* at 61:20–62:22, 66:12–14. After judgment, DJB spent $34,000 rebuilding the deck and stairs while the City inspected the work and collected permit fees. *Id.* at 63:5–25, 65:15–66:2; Doc. 52-32. The City certified the Property compliant in May 2023, but by then "per policy, there wasn't really an option" to settle for less than the full fine. Doc. 51-3 at 49:6–15, 83:12–16.

Nor does Count II rest on a "subjective expectation[ ]." Doc. 51 at 48. It rests on what the City told DJB and what it withheld. Notice must tell an owner how to contest a deprivation. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–15 (1978). Individual notice of a remedy may be unnecessary when the remedy is "established by published, generally available state statutes and case law," but not when procedures "are arcane and are not set forth in documents accessible to the public." *City of W. Covina v. Perkins*, 525 U.S. 234, 241–42 (1999). The SOP was

that kind of rule. Had Don known its terms, he would not have sold his Vermont property to fund the deck and stay bond. Doc. 51-5 at 123:2–5; Doc. 52-1 ¶ 15.

### C. The *Mathews* Factors Favor DJB

The City never applies *Mathews v. Eldridge*, which governs what process was due. 424 U.S. 319, 335 (1976). The test weighs the private interest, the risk of an erroneous deprivation under the procedures used and the value of additional safeguards, and the government's interest. *Id.* Each factor favors DJB.

The private interest is DJB's ownership of the Property, its only asset and only source of income. Doc. 52-1 ¶ 2. An interest in real property is "of historic and continuing importance." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993). The fine and foreclosure eliminated it. Doc. 29 ¶ 70.

The risk of error was high. The fine grew for five and a half years without notice or review, and any chance at a reduction turned on a cutoff the City never disclosed. Doc. 52-24 at 6–7; Doc. 51-22 at 3; Doc. 51-3 at 23:11–24:2, 43:4–17, 79:20–23. The City's incentives added risk. Its foreclosure counsel's fee rose from 25 to 40 percent as a case moved toward judgment, and sale proceeds went to the general fund. Doc. 51-22 at 3; Doc. 52-30 ¶ 2; Doc. 52-31 ¶ 2. A "direct pecuniary interest in the outcome" calls for more process. *James Daniel Good*, 510 U.S. at 55–56. Reduction hearings for other owners show the value of added safeguards. The City forgave about 97 percent of their fines. Doc. 51-3 at 13:17–14:21.

The burden on the City would be small. A notice that a foreclosure filing ends the reduction process would cost almost nothing. A hearing on the accumulated

amount would add little, because the City already holds reduction hearings. Doc. 51-3 at 13:17–15:2. Neither would hinder enforcement. An owner who knows the deadline has more reason to finish repairs before the City files, and compliance is the only purpose the City claims for its fines. *Id.* at 7:19–8:13, 70:23–25.

**D. Section 162.11 Was Not an Adequate Remedy**

Finally, the City argues that DJB "failed to exhaust" a Section 162.11 appeal. Doc. 51 at 49–50. Section 1983 does not require exhaustion. *Patsy*, 457 U.S. at 516. The City's only case, *Conley*, applied a Florida exhaustion rule to a state claim "on state constitutional grounds." 2010 WL 146861, at *6. The Eleventh Circuit rule the City invokes "is not an exhaustion requirement." *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000). It asks whether a state procedure is "able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id.* at 1331; *see McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) (en banc).

A Section 162.11 appeal could not do that here. The appeal must be filed within 30 days and is "limited to appellate review of the record created before the code enforcement board." Doc. 51-28 at 8 (§ 9-74); *see* Fla. Stat. § 162.11. An appeal from the 2015 orders could not have reviewed an SOP adopted in 2019, a foreclosure filed in 2021, or a fine total fixed by a 2022 judgment. *Club Madonna, Inc. v. City of Miami Beach* found a Section 162.11 appeal adequate because the reviewing court "has the power to remedy any procedural deficiencies and cure violations of due process." 924 F.3d 1370, 1379 (11th Cir. 2019). No court can cure a deficiency that has not yet occurred.

The City's other cases involved defects in a proceeding the owner could have appealed. In *Ficken*, the owner "could have raised the issue of whether the notice he received was insufficient" in an appeal. 2022 WL 2734429, at *3. In *Lindbloom*, the owner challenged a hearing he had attended and sued the next month instead of appealing. 808 F. App'x at 747, 749. And in *Bee's Auto, Inc. v. City of Clermont*, 927 F. Supp. 2d 1318, 1332 (M.D. Fla. 2013), the owners "steadfastly refused" a process that remained open to them. DJB's claims, by contrast, were too early to raise in 2015 and too late afterward. *Cf. Williams v. Reed*, 604 U.S. 168, 176 (2025) (state exhaustion rule could not bar Section 1983 claims through a "catch-22").

Florida offered nothing else. Chapter 162 "makes no mention of a mechanism . . . to recoup an unlawfully imposed fine." *Kupke v. Orange Cnty.*, 293 F. App'x 695, 699 (11th Cir. 2008). The reduction process closed once the City sued, and the foreclosure court would not hear DJB's objections. Doc. 51-22 at 3; *DJB Rentals*, 373 So. 3d at 414. The deprivation came through established procedures, not a random or unauthorized act. Where "it is the state system itself that destroys a complainant's property interest," a later remedy does not suffice. *Logan*, 455 U.S. at 436; *see Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990).

Finally, DJB does not challenge Section 162.11 on its face. *See* Doc. 51 at 50–51. Its claim is that a 30-day appeal from the 2015 orders was an inadequate remedy for the deprivations that occurred years later.

## CONCLUSION

The Court should deny the City's motion for summary judgment.

DATED: November 25, 2026.

Respectfully submitted,

/s/ Johanna B. Talcott
Johanna B. Talcott, Fla. Bar No. 1008094
*Lead Counsel*
Christina M. Martin, Fla. Bar No. 0100760
Pacific Legal Foundation
4440 PGA Blvd., Suite 600
Palm Beach Gardens, Florida 33410
Telephone: (561) 691-5000
jotalcott@pacificlegal.org
cmartin@pacificlegal.org

Wesley P. Hottot, Wash. Bar No. 47539*
Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
Telephone: (425) 576-0484
whottot@pacificlegal.org

*Counsel for Plaintiff*
**pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, I served this document via the Court's electronic filing system on counsel for the Defendant:

Elizabeth W. Neiberger
BRYANT MILLER OLIVE P.A.
One S.E. Third Avenue, Suite 2200
Miami, FL 33131
eneiberger@bmolaw.com
*Lead Counsel for Defendant City of Largo*

Jamie A. Kilpatrick
BRYANT MILLER OLIVE P.A.
400 North Tampa Street, Suite 1600
Tampa, FL 33602
jkilpatrick@bmolaw.com
smcgee@bmolaw.com
*Additional Counsel for Defendant City of Largo*

/s/ Johanna B. Talcott
Johanna B. Talcott
Pacific Legal Foundation